**Jose A. ZELEDON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 98–CF–427.**

District of Columbia Court of Appeals.

Argued March 20, 2001.

Decided April 12, 2001.

Thomas D. Engle, Washington, DC, with whom Sharon L. Burka, was on the brief, for appellant.

Jacqueline Bussiere–Burke, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher, Roy W. McLeese, III, and Linda Otani McKinney, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, FARRELL, and GLICKMAN, Associate Judges.

FARRELL, Associate Judge:

Appellant was found guilty by a jury of aggravated assault while armed (D.C.Code §§ 22–504.1, –3202) (1996) and assault with a dangerous weapon (*id.* § 22–502). In her charge to the jury, the trial judge did not define "serious bodily injury," which the government had to prove appellant caused in order to convict him of aggravated assault. After the trial in this case, we held that the trial court must instruct the jury on the definition of serious bodily injury adopted in *Nixon v. United States,* 730 A.2d 145 (D.C.1999). *See Gathy v. United States,* 754 A.2d 912, 914, 916 (D.C. 2000). The primary question on this appeal is whether the failure to define that element requires reversal of appellant's aggravated assault conviction, as it did the

similar conviction of the appellant in *Gathy*. *See id.* at 916.[1] The government's main argument is that, unlike Gathy, appellant failed to preserve the claim of instructional error, and that under the appropriate "plain error" standard of review reversal is not warranted. Unpersuaded by that argument, and unable to agree with the government that the instructional error was harmless in any case, we reverse appellant's conviction for aggravated assault while armed. At the same time, we find no reason to reverse his conviction for assault with a dangerous weapon.

## I.

■ We reject at the outset appellant's contention that the evidence failed to support his aggravated assault conviction.[2] Viewed in the light most favorable to the government, the evidence permitted the jury reasonably to find that appellant had stabbed his wife repeatedly with a knife and caused her, among other things, arterial bleeding and a broken collarbone. Unlike in *Nixon, supra*, there was medical testimony that the bleeding was severe enough to have resulted in death if left untreated. Also, circumstantial evidence of the victim's condition (including her screaming) allowed the jury to conclude that she suffered extreme physical pain from the stabbings and broken collarbone. *See Gathy*, 754 A.2d at 918 ("[A] reasonable juror could infer from the nature of [the victim's] injuries, and from his reaction to them, that the pain was extreme"). Regarding the substantial risk of death, appellant points to the fact that the victim received timely treatment for her wounds, but we think it unlikely—in the extreme— that the legislature intended the "substantial risk" of death to depend on whether or not the victim was fortunate enough to receive medical care.

We therefore turn to appellant's claim that the failure to instruct on "serious bodily injury" requires reversal of that conviction.

### A.

The government's main argument, as pointed out, is that appellant did not adequately object to the trial judge's failure to define the statutory phrase. The court has held that

> [i]n order to preserve an issue of jury instructions for appeal, a party must state "distinctly the matter to which [he] objects and the grounds of the objection." Super. Ct.Crim. R. 30. In other words, objections to jury instructions must be specific enough to direct the judge's attention to the correct rule of law; a party's request for jury instructions must be made with sufficient precision to indicate distinctly the party's thesis.

*Russell v. United States*, 698 A.2d 1007, 1011 (D.C.1997). We examine the proceedings in light of this standard.

### 1.

The issue first arose during the discussion of jury instructions when the trial

---

1. Applying the retroactivity rule of *Johnson v. United States*, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), in *Gathy* we gave the benefit of the instructional requirement to all cases—such as Gathy's and appellant's—pending on direct appeal at the time of *Nixon*.

2. In *Nixon, supra*, adopting the definition of serious bodily injury incorporated in the District's sexual abuse statute, D.C.Code § 22–4101(7), we held that to prove that the defendant caused serious bodily injury for purposes of aggravated assault, the government must show that the injury inflicted "involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." *See Nixon*, 730 A.2d at 149–50.

judge asked the parties their views on whether serious bodily injury should be defined to the jury. The prosecutor was "uncomfortable about trying to define it" and said, "I think it's a jury question." Appellant's counsel disagreed and asked that the element be defined to the jury in terms of "substantial risk of death," pointing to what she thought was support for that definition in the legislative history of the statute. The judge, however, viewed the legislature's intent as having been to adopt "the kind of standard language that has been around as a jury question for decades." When defense counsel renewed her request "for an instruction that says ... a substantial risk of death," the judge disputed that definition—correctly, *see* note 2, *supra*—as underinclusive, but affirmed her intention not to define the concept at all because it "[has] been used many times in the District of Columbia [and] has been sent to the jury as a jury issue." Nonetheless, she left "open the possibility of defining it if and when [she] got a question [from the jury] seeking that it be defined."

Soon after the jury began deliberating, it in fact sent out a note asking: "Is there a legal definition or instruction concerning what constitutes serious bodily injury or is the jury to decide what qualifies as serious?" In keeping with her views stated earlier, the trial judge told the parties that "[t]here's no question ... I need to tell them that it is for the jury to decide what qualifies as serious." She was prepared to illustrate for them "what in various contexts [has] been described as serious bodily injury,"[3] but would remind them that "in the end, it is for you to decide." Appellant's counsel disapproved of that course, stating, "I think that might confuse them" and that "our preference would be for the [c]ourt to simply tell the jury that they are the ones to decide." The judge yielded to the defense preference and, in response to the note, merely told the jury that "[b]ottom line, ladies and gentlemen, the jury is to decide what qualifies as serious."

### 2.

■ The government argues that appellant never "indicate[d] distinctly [his] thesis," *Russell*, 698 A.2d at 1011, that the court should define serious bodily injury and, indeed, "invited" the judge to forgo any explanation when in response to the jury note he stated his preference for no further instruction rather than the illustrations the judge proposed to give. It is true that appellant asked for a definition of serious bodily injury that was underinclusive, omitting all of the constituents of the *Nixon* definition but "substantial risk of death." But in *Gathy* the requested instruction—the Model Penal Code definition—was also incomplete, although less so, because it omitted "unconsciousness [or] extreme physical pain," yet we deemed the request sufficient to preserve the claim of failure by the judge to instruct

**3.** In particular, she suggested mentioning to the jury three definitions, one from the Model Penal Code, one from the District's sexual abuse statute (and later adopted by *Nixon, see* note 2, *supra* ), and one from the California Penal Code which this court had quoted in *Comber v. United States*, 584 A.2d 26, 38 n. 10 (D.C.1990) (en banc). The Model Penal Code, in § 210.0(3), states that "[s]erious bodily injury means bodily injury which (1) creates a substantial risk of death; (2) causes serious permanent disfigurement; or (3) causes protracted loss or impairment of the functions of any bodily member or organ." The California Penal Code, in § 243, provides that " '[s]erious bodily injury' means a serious impairment of physical condition, including, but not limited to, the following: loss of consciousness; concussion; bone fracture; protracted loss or impairment of function of any bodily member or organ; a wound requiring extensive suturing; and serious disfigurement."

*at all* on the statutory element. In *Whitaker v. United States*, 617 A.2d 499 (D.C. 1992), we held that the trial judge had erred in not perceiving the need to re-instruct the jury on a point, when from successive notes they had sent it appeared they were confused. On the government's petition for rehearing, we rejected its argument that the appellant could not claim error in the failure to instruct because the instruction the defense had proposed was inaccurate. We explained in part:

> [A] request for an instruction may be sufficient even if it was not made with consummate clarity. Though arguably inaccurate, Ms. Whitaker's request to charge was sufficient to direct the judge's attention to the correct rule of law. It directed the mind of the court to the legal principle, and . . . required that a correct instruction be given with regard thereto. Accordingly, the proposed instruction should have been corrected by the court and given.

*Id.* at 508 (citations, internal quotation marks, brackets, and footnote omitted). In this case, as in *Whitaker*, the judge was obligated to instruct on a particular matter. Although there are certainly limits to the judge's duty to "get it right" despite a mistaken proffer by the defense of what an instruction should be, appellant's request for a definition of serious bodily injury was sufficient to apprise the judge of the defense's view that some instruction was required, particularly in light of our treatment of the request in *Gathy*. Moreover, as in *Whitaker*, the judge's refusal to instruct here did not stem from the content of the proposed instruction but from her belief that no instruction was necessary. *See Whitaker*, 617 A.2d at 507.

■ The government's further argument that appellant "invited" the failure to instruct by opposing the judge's proposed course of action in reply to the jury note is unpersuasive. The judge submitted the case to the jury without defining serious bodily injury. The receipt of the note did not change her view that the meaning was for the jury to determine. Thus, while proposing to reply to the note by stating "what in various contexts [has] been described as serious bodily injury," she made plain that she needed to tell them "that they are the ones to decide [what qualifies as serious]." In that context, although appellant's objection that the proposed (multi-definitional) guidance would be "confusing" was unhelpfully vague, it would be quite unreasonable to treat his preference that instead the jurors be told "simply . . . that they are the ones to decide" as abandoning his previous request for a definition of the term. Given the choice between two responses that both (in light of *Gathy*) were erroneous, appellant did not waive his claim of error by choosing one.

### B.

The government argues, alternatively, that the failure to instruct was harmless error because "[t]here is simply no possibility that the verdict . . . would have been altered had the trial court provided the jury with the *Nixon* definition of 'serious bodily injury' " (Br. for Appellee at 24 n. 14). Notably, the government makes this argument although it did not do so in *Gathy*, on facts difficult to distinguish—in terms of the severity of the victim's wounds—from those in this case.[4] As to

---

4. Although there was no proof of substantial risk of death in *Gathy*, this court arrayed the evidence from which the jury could reasonably have found that every other component of the *Nixon* definition was met—*i.e.*, that the victim "suffered serious bodily injuries involving a serious risk of unconsciousness, extreme physical pain, or protracted and obvious disfigurement." *Gathy*, 754 A.2d at 918–19.

what test for harmless error applies, the government asserts that since the trial judge "did not fail to instruct on an *element* of the offense, but rather declined to define a term contained in the description of the elements" (Br. for Appellee at 19 n. 11 (emphasis by government)), the error was not of constitutional magnitude and so "the *Chapman* [*v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ] standard is inapplicable" (*id.*). It cites no authority for this point, and some courts have in fact applied *Chapman*'s "beyond a reasonable doubt" standard to the failure to define an element the jury was told it had to find to convict. *See, e.g., State v. Teel,* 793 S.W.2d 236, 249–50 (Tenn.1990) (citing cases). But we need not decide whether *Chapman* or the lesser standard of *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), applies in this case because under either test we are not convinced that the error was harmless.

■ As explained earlier, the government presented evidence from which the jury could find beyond a reasonable doubt that the victim's knife wounds constituted serious bodily injury under *Nixon.* But implicit in our holding in that case that the jury may not be left to its own experience and common sense in defining the element is that without the aid of a legal definition jurors may set the standard of "aggravat[ion]" below what the legislature intended in fashioning a crime that increases twenty-fold the maximum prison term for a simple assault. *See* D.C.Code § 22–504(a) (setting maximum prison term for assault at 180 days). Although not decisive, we know in this case that jurors were uncertain whether their own notions of what serious bodily injury means conformed to the law's requirements. And we know from *Nixon* that even injuries such as knife or gunshot wounds are not per se "serious bodily injury." *See Nixon,* 730 A.2d at 150 (citing with approval *Williams*

*v. State,* 696 S.W.2d 896, 898 (Tex.Crim. App.1985)). Appellant presented medical testimony that the victim's injuries were not life-threatening because (for example) her arterial bleeding had been "minuscule" before she was treated. Without benefit of the *Nixon* instruction, we have no reasonable assurance that the jury measured the conflicting evidence of seriousness against the heightened standard conveyed by terms such as "substantial risk of death, unconsciousness, extreme physical pain, or protracted loss [or] impairment of a bodily member." Moreover, measured against that standard, we also cannot say that the evidence was such that the jury necessarily would have found serious bodily injury if correctly instructed.

## II.

■ Appellant contends that both of his convictions—assault with a dangerous weapon as well as aggravated assault while armed—were tainted by the trial judge's exclusion of his family members from the courtroom (and, indeed, the courthouse) for the rest of the trial when, shortly before closing arguments, his attorney informed the judge that appellant's "family was sitting outside in the hallway [displaying] signs" that requested, variously, that appellant be "give[n] ... a chance" and be "sen[t] ... home" because his children needed him. Concerned that jurors might have seen the signs during the recess and that further such demonstrations would be attempted, the judge ordered the family members (by then seated in the courtroom) to leave the building until after the verdict. No one else was excluded from the courtroom.

■ Since appellant made no objection to the judge's action, his present argument that she overreacted at the expense of his constitutional right to a public trial, *see Kleinbart v. United States,* 388 A.2d 878,

881 (D.C.1978), is reviewable only for plain error. *See United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). The right to a public trial, important though it is, is limited by the trial court's obligation to preserve order and basic decorum in the courtroom. *See Estes v. Texas*, 381 U.S. 532, 583, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965). Here the judge's concern that the displays might have been witnessed by jurors was borne out when she learned, upon inquiry, that one juror had seen the signs and mentioned the fact to other jurors.[5] The judge was not bound to risk a repeat of such efforts to sway the jury in its deliberations. Indeed, even if the efforts were not repeated, the judge could be legitimately concerned that jurors who had learned of the display would continue to associate the message with the sign-holding individuals allowed to remain in the courtroom. Moreover, the judge did not exclude the public at large but only those members who had engaged in the offending conduct and persons intimately associated with them. *See Reed v. United States*, 461 F.2d 1106 (8th Cir.1972) (defendant not deprived of right to public trial when six daughters were excluded from courtroom but doors were otherwise open to public). There was no plain error.[6]

### III.

In sum, we reverse appellant's conviction for aggravated assault while armed and remand that count for a new trial.

We affirm the conviction for assault with a dangerous weapon.

*So ordered.*

---

5. This juror stated that he/she "was offended [by the signs].... I felt ... that it was an attempt to influence us."

6. Appellant's remaining contention, with which the government agrees, *see Gathy*, 754 A.2d at 919, that his conviction for assault with a dangerous weapon merges with his conviction for aggravated assault while armed is one we need not reach, given our reversal of the latter conviction. On the other hand, since appellant does not and could not reasonably challenge the sufficiency of the evidence to support his ADW conviction, the status of that conviction—for merger purposes—must await the government's decision whether to retry him for aggravated assault. *See Gathy*, 754 A.2d at 920.