**Wesley P. WILSON, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 99–CF–838.**

District of Columbia Court of Appeals.

Argued Oct. 18, 2001.
Decided Nov. 15, 2001.

Bridgette L. Adams, appointed by the court, for appellant.

Bernard J. Delia, Washington, DC, for appellee. Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., James E. Boasberg and Eileen F. Sheehan, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, REID and WASHINGTON, Associate Judges.

REID, Associate Judge.

We are faced with yet another case in which the appellant alleges instructional error because the trial judge failed to define the element of "serious bodily injury" as it appears in our aggravated assault statute, D.C.Code § 22–504.1 (1996); 22–404.01 (2001).[1] Appellant Wesley P. Wilson, Jr. also challenges the trial court's denial of his motion for judgment of acquittal. We affirm, holding that Mr. Wilson did not properly preserve the instructional error issue; that the trial court did not commit plain error by failing to define "serious bodily injury"; and that the trial judge did not err by denying Mr. Wilson's motion for judgment of acquittal.

## FACTUAL SUMMARY

The government presented evidence concerning a physical altercation between Mr. Wilson and complainant Larry Daniel on May 28, 1997, at a convenience store, the Davis Market on Georgia Avenue in the Northwest quadrant of the District of Columbia. Before the altercation ended, Mr. Daniel's left eyeball had been cut by Mr. Wilson.

Mr. Daniel's testimony shows that around 6:30 p.m. on the day of the altercation, he went to the Davis Market to purchase a lottery ticket. While he was standing in the lottery line, Mr. Wilson asked him for a quarter. When Mr. Daniel stated that he didn't have a quarter, Mr. Wilson told him he would not win the lottery. The two men began to argue. Mr. Wilson soon pulled out a knife with a two inch blade, "said [he was] going to punch [Mr. Daniel] ... and start[ed to] proceed[ ] towards [him]." When Mr. Wilson got within a foot of his presence, with "the knife right in front of him," Mr. Daniel kicked him in the groin. A second kick did not stop Mr. Wilson's advance; Mr. Daniel "grabbed [his][ ] hand and ... pinned him against the window" of the lottery booth. The two men "struggled for a few minutes." After the lady behind the lottery window told the two to "take it outside," the struggle ceased; Mr. Daniel resumed his position in the lottery line; and Mr. Wilson moved toward the exit of the Davis Market.

Instead of leaving the store, Mr. Wilson turned and cut Mr. Daniel on his left eyeball. Mr. Daniel, who is legally blind in his right eye "felt the sharp stinging of the blade...." Blood began to run from his face. Someone gave him paper towels but they soon were "soaked with [his] blood and blood was dripping all over [his] shirt." Mr. Daniel asked the lady in the lottery booth to call the police.

When the police did not come immediately, Mr. Daniel decided to go to his home

---

1. Our prior cases are: *Zeledon v. United States,* 770 A.2d 972 (D.C.2001); *Gathy v. United States,* 754 A.2d 912 (D.C.2000); and *Nixon v. United States,* 730 A.2d 145 (D.C.), cert. denied, 528 U.S. 899, 120 S.Ct. 233, 145 L.Ed.2d 196 (1999).

to clean up. At the time of the incident, he lived within 50 to 75 feet of the store. As he arrived at his apartment building, he asked one of the other residents to call the police, and "went upstairs to clean up." Subsequently, two police officers arrived, and still later, an ambulance. While he spoke with the police officers, Mr. Daniel was still bleeding. The ambulance took him to the Washington Hospital Center emergency room and eventually he was transferred to the eye clinic at the hospital.

Dr. Cathy Shrader, the ophthalmologist at the Washington Hospital Center who treated Mr. Daniel, testified that "[h]is left eye had sustained a laceration, a cut, that appeared to be full thickness of the wall of the eye." The "cut ... was located on the white part of the eye" and "was consistent with a sharp cut." Dr. Shrader described it as "a very serious injury[,] ... a vision threatening injury." Because Mr. Daniel's injury "was a full thickness injury[,][he] needed to be taken to the operating room." Surgical exploration established that neither the retina nor the vitreous jelly in the back of the eye had been "pulled into the cut." Therefore, Dr. Shrader and others were able to close Mr. Daniel's wound by placing four "interrupted" stitches on Mr. Daniel's eyeball. After the surgery, Dr. Shrader prescribed "eye drops for inflammation" and a patch for nighttime to avoid pressure on the eye and the reopening of the incision. In addition, the eye clinic monitored Mr. Daniel to make certain that he did not develop a retinal detachment or other complications.

Although Mr. Daniel was legally blind in his left eye the day following the surgery, due to inflammation, he regained "normal" vision in the eye. However, he missed three months of work due to the injury. In addition, the cut left him with lingering problems that he did not have prior to the incident. Instead of five minutes to read the newspaper, Mr. Daniel now requires 30 to 45 minutes. As he put it: "It takes me more than normal to read what I used to read for a few minutes.... [D]epending on how long I read, my eye becomes blurry."

In his statement to the police following the aggravated assault on May 28, 1997, Mr. Wilson acknowledged that he asked Mr. Daniel for a quarter; the two men "tussle[d]" and he cut Mr. Daniel. He maintained that he acted in self-defense. At trial, the only person to testify for the defense was Rev. Franklin Pryor who managed the apartment building where Mr. Wilson resided at the time of the incident. Rev. Pryor described himself as a "good friend" of Mr. Wilson. When asked whether he considered Mr. Wilson to be "peaceful," Rev. Pryor responded, "yes."

## ANALYSIS

Mr. Wilson argues that the trial court committed plain error by not defining the term "serious bodily injury." Specifically, he contends that: "[I]f given the proper instruction, the jury could reasonably have determined that the government failed to meet its burden of proving beyond a reasonable doubt that Mr. Wilson caused 'serious bodily injury' to Mr. Daniel, as that term is defined in the aggravated assault statute."[2] Furthermore, he maintains

---

2. The trial judge charged the jury on aggravated assault as follows:

> One, that the Defendant caused serious bodily injury to the complainant. In this case I believe it's Mr. Larry Daniel.

> Two, that the Defendant either, a., intended to cause serious bodily injury to another, or knew that serious bodily injury to another person would result from his conduct. Or, b., intentionally or knowingly engaged in conduct which created a grave risk of

that, "in accordance with the Sixth Amendment, this Court should require an actual jury finding of guilt as to the omitted element of the offense." Thus, Mr. Wilson in essence regards the definition of "serious bodily injury" to be an integral part of one element of the aggravated assault statute. The government asserts that Mr. Wilson "correctly concedes the standard of review is plain error, as there was no request for an instruction on 'serious bodily injury' and no objection (at any time) to the instructions as they were given by [the trial judge]." Furthermore, the government argues that to meet his burden under the plain error standard, Mr. Wilson must satisfy the legal principle set forth in *United States v. Olano*, 507 U.S. 725, 732–37, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), as discussed in *Coates v. United States*, 705 A.2d 1100, 1104 (D.C.1998).

This is the fourth case within recent years which focuses on "serious bodily injury," an element of our aggravated assault statute. In *Nixon v. United States*, 730 A.2d 145 (D.C.), *cert. denied*, 528 U.S. 899, 120 S.Ct. 233, 145 L.Ed.2d 196 (1999), we held that the government failed to present evidence sufficient to demonstrate that the victim sustained "serious bodily injury" within the meaning of the aggravated assault statute. We adopted the definition of "serious bodily injury" set forth in D.C.Code § 22–4101(7) (1996).[3] In a subsequent case, *Gathy v. United States*, 754 A.2d 912 (D.C.2000), "the government conceded ... that the trial court should have instructed the jury on the definition of 'serious bodily injury' ... or something very close to it." *Id.* at 916. We concluded that the appellant preserved the instructional error as part of his argument that the aggravated assault statute "was unconstitutionally vague since the term 'serious bodily injury' was not defined in the statute with sufficient clarity." *Id.* at 915–17. We reversed the appellant's conviction as a result of the instructional error.[4] Similarly, in *Zeledon v. United States*, 770 A.2d 972 (D.C.2001), we determined that there was enough in the record on appeal to substantiate the appellant's preservation of the claimed instructional error relating to the trial court's failure to define "serious bodily injury."[5]

serious bodily injury to the complainant. And which manifested an extreme indifference to human life.

Three, that at the time of the offense, the Defendant was armed with a knife or razor. An act is done [intentionally] or knowingly if the Defendant acted consciously, deliberately, voluntarily and not mistakenly, accidentally or inadvertently.

Now, I explained that one of the elements here required either intent to cause serious bodily injury to another person or knew that serious bodily injury could result or intentional and knowing conduct which created a grave risk of injury.

3. The definition of "serious bodily injury" has now been recodified in D.C.Code § 22–3001(7) (2001), which provides:

"Serious bodily injury" means bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty.

4. We stated: "We emphasize that we do not hold that the aggravated assault statute is void for vagueness, as appellant contends. We hold only that the trial court erred by not instructing the jury in a manner consistent with *Nixon* and that the error requires reversal." *Gathy, supra*, 754 A.2d at 916 n. 4.

5. Furthermore, we held that under either the *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), constitutional error test, or the *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), harmless error standard, the instructional error was not harmless. *Zeledon, supra*, 770 A.2d at 977.

■ Although there is some indication in the record before us that counsel for Mr. Wilson articulated the need for proof of a "serious" injury and the trial judge understood that the government had to prove a "serious bodily injury" to Mr. Daniel rather than mere injury, we cannot say that the record supports preservation of the instructional error by Mr. Wilson.[6] Indeed, his instructional error claim is based on the plain error doctrine. Nonetheless, Mr. Wilson contends, in essence, that the definition of "serious bodily injury" is an integral part of one element of the aggravated assault statute; and the trial court's failure to give an instruction defining "serious bodily injury" violated his Sixth Amendment constitutional right to a fair trial. Thus, reversal is mandated even under a plain error standard.

In light of our past cases, and those from other jurisdictions, Mr. Wilson cannot prevail on his instructional and plain error arguments. As the First Circuit observed in *United States v. Gomez*, 255 F.3d 31 (1st Cir.2001), "the plain-error exception is cold comfort to most defendants pursuing claims of instructional error." *Id.* at 37 (citing *United States v. Weston*, 960 F.2d 212, 216 (1st Cir.1992) ("While reversal of a conviction predicated on unpreserved instructional error is theoretically possible, [it is] the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court.")).

■ Under the plain error standard, as set forth in *Olano, supra,* Mr. Wilson not only must establish "error," but also that the error is "plain" and "affect[s] substan-

tial rights." *Olano, supra,* 507 U.S. at 732, 113 S.Ct. 1770. If he satisfies these three hurdles, he must then show either a "miscarriage of justice," that is, actual innocence; or that the trial court's error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id.* at 736, 113 S.Ct. 1770 (citing *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)). *See also Gomez, supra,* 255 F.3d at 37. Given our decisions in *Nixon, Gathy* and *Zeledon, supra,* the failure to define "serious bodily injury" constituted "error." Thus, the first prong of the *Olano* test is satisfied.

■ Whether the instructional error in this case was "plain" is not altogether clear. In *(Joyce) Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the Supreme Court of the United States held that: "[W]here the law at the time of trial was settled and clearly contrary to the law at the time of appeal—it is enough that an error be 'plain' at the time of appellate consideration." *Id.* at 468, 117 S.Ct. 1544. Arguably, the law regarding the elements of proof concerning aggravated assault, and the necessity of proving the "seriousness" of the victim's injury, may not have been "settled" at the time of Mr. Wilson's trial. On the other hand, competent prosecutors and judges reading our aggravated assault statute should have known, even before our decision in *Nixon, supra,* that the words "serious bodily injury" were significant and did not mean simply any type of injury, "no matter how small," as "injury" is defined in jury instructions for assault

---

6. As the trial began to wind down, the trial judge asked counsel whether there were "any other special instructions that the parties wanted [her] to consider...." During the discussion as to whether an instruction on a lesser included offense should be given, defense counsel stated: "The question is ...

whether or not it was serious enough to have aggravated assault." The trial judge responded: "I understand that." However, defense counsel did not request an instruction on the definition of "serious bodily injury" and did not object when one was not given.

with a dangerous weapon.[7] Indeed, one of the definitions of "serious" in WEBSTER'S NEW WORLD DICTIONARY (2d Coll. ed. 1982) is: "[G]iving cause for concern; dangerous (a *serious* injury)." *Id.* (emphasis in original).

Even if Mr. Wilson overcomes the hurdle surrounding the word "plain," the barrier to his success under the third and final part of the *Olano* plain error standard is enormously high, because he must first show that the failure to define "serious bodily injury" affected "substantial rights," and if it did, that the court's error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Olano, supra,* 507 U.S. at 736, 113 S.Ct. 1770.

■ In Mr. Wilson's case, the trial judge did not omit any of the elements of the aggravated assault statute during his final instructions to the jury. *Cf. Neder v. United States,* 527 U.S. 1, 10, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (a "misdescription" or "omission" of an element of a crime "precludes the jury from making a finding on the *actual* element of the offense."); *see also Wilson v. State,* 14 P.3d 912, 915–16 (Wyo.2000).[8] Moreover, we have said previously that a trial court has no "general duty to instruct the jury *sua*

*sponte*" regarding the definition of "particular terms." *Guishard v. United States,* 669 A.2d 1306, 1315 (D.C.1995) (quoting *Allen v. United States,* 495 A.2d 1145, 1150 (D.C.1985) (en banc)). In that regard, in *Curington v. United States,* 621 A.2d 819 (D.C.1993), the question presented was whether the trial court committed plain error by failing to give the jury the statutory definition of the word "pistol" in its final instructions. After quoting Super. Ct. Crim. R. 30,[9] we concluded that the appellant did not meet the plain error standard because:

> The statutory definition of the term "pistol" ... is just that—a *definition* of a term included in one of the elements. It is *not an element* of the statutory offense that the trial court was required to specifically include as part of the jury instructions.

*Curington, supra,* 621 A.2d at 823 (emphasis in original) (footnote omitted). Thus, the omission of a definition of a term appearing in an element of the statutory crime is not equivalent to the omission of an essential element of the crime.

In *Wilson, supra,* a case involving the crime of aggravated assault and battery in Wyoming, the trial court refused to give the jury the statutory definition of "serious bodily injury," because "the term was not

7. *See* CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Instruction 4.07.

8. As *Wilson, supra,* recognized:
 A court need not give an instruction defining a term unless it has a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances. Prejudicial error must be demonstrated by appellant and prejudice will not be demonstrated unless the instruction confused or misled the jury with respect to the proper principles of law.
 *Wilson v. State, supra,* 14 P.3d at 916 (citations omitted).

9. Rule 30 provides in pertinent part: "No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection." *See Russell v. United States,* 698 A.2d 1007, 1012 (D.C.1997) ("[O]bjections to jury instructions must be specific enough to direct the judge's attention to the correct rule of law; a party's request for jury instructions must be made with sufficient precision to indicate distinctly the party's thesis.") (citations omitted); *see also Hicks v. United States,* 707 A.2d 1301 (D.C. 1998).

an essential element of the charged offense." 14 P.3d at 915. The Wyoming Supreme Court recognized the distinction between an essential element of the crime and a statutory definition of an element of an offense. The court concluded that: "[T]he decision to give or refuse an instruction on the statutory definition of a term used in defining an element of an offense is within the latitude afforded to the district court to tailor the instructions to the circumstances of the case." *Id.* at 916. In another case, the court held that there was error, but no plain error when the trial judge failed to give the jury the definition of "substantial step" as used in the crime of attempted sexual assault:

> A court need not give an instruction defining a term unless it has a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances.

*Compton v. State,* 931 P.2d 936, 941 (Wyo. 1997) (citation omitted).

In the matter before us, we see not even a hint that the jury misunderstood the elements of aggravated assault, or that the instruction given as to aggravated assault while armed misled or confused the jury. Unlike other cases, the jury sent no note to the judge requesting clarification related to an element of the crime. *See Zeledon, supra,* 770 A.2d at 975–76. (While deliberating, the jury "sent out a note asking: 'Is there a legal definition or instruction concerning what constitutes serious bodily injury or is the jury to decide what qualifies as serious?'"). Here, the trial judge identified "serious bodily injury" as an element of aggravated assault. Had the jury been given the definition of "serious bodily injury," as adopted in *Nixon, supra,* in light of the evidence introduced at trial showing protracted loss or impairment of the left eye due to a "full thickness cut to the eyeball" of a man legally blind in the right eye, we cannot think that a juror who voted to convict Mr. Wilson under the instruction given by the trial judge would have acquitted him of aggravated assault because of insufficient evidence of "serious bodily injury."

■ Even assuming that Mr. Wilson's "substantial rights" somehow were affected, he still could not clear the final hurdle under the plain error standard—that he show either a miscarriage of justice, that is, actual innocence; or that the trial court's error in not defining "serious bodily injury" "seriously affect[ed] the fairness, integrity or public reputation of proceedings." *Olano, supra,* 507 U.S. at 736, 113 S.Ct. 1770. Mr. Wilson takes the position that he has satisfied the latter requirement because the evidence against him was insufficient as a matter of law to establish that Mr. Daniel sustained "serious bodily injury." [10] The record simply does not support this assertion.

■ Significantly, the testimony of Mr. Daniel reveals that when cut on his eyeball, he "felt the sharp stinging of the

---

10. "We review a trial court's denial of a motion for judgment of acquittal *de novo,* and like the trial court, determine whether the evidence, viewed in the light most favorable to the government, was such that a reasonable juror could find guilt beyond a reasonable doubt." *(Earl) Johnson v. United States,* 756 A.2d 458, 461 (D.C.2000) (citing *Curry v. United States,* 520 A.2d 255, 263 (D.C.1987) (citations omitted)). "Moreover, '[i]t is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction.'" *Zanders v. United States,* 678 A.2d 556, 563 (D.C.1996) (quoting *Gayden v. United States,* 584 A.2d 578, 580 (D.C.1990) (quoting *Frendak v. United States,* 408 A.2d 364, 371 (D.C. 1979))) (further citation omitted).

blade." Blood ran down his face and could not be absorbed by the paper towels brought to him by a worker in the convenience store. In addition, according to Dr. Shrader, who treated Mr. Daniel after he was transported to the Washington Hospital Center in an ambulance, Mr. Daniel "sustained a laceration, a cut, that appeared to be full thickness of the wall of the eye." The doctor characterized the injury as "a very serious injury[,] ... a vision threatening injury." Four "interrupted" stitches were required to close the cut. The eye was inflamed, requiring not only post-surgery medication, but also a night patch to avoid pressure on the eye. The eye also required continued monitoring for development of complications such as retinal detachment. The fact that Mr. Daniel was legally blind in his right eye made the cut to his left eyeball even more serious since it impaired and threatened his entire vision. Mr. Daniel missed three months of work, evidencing the seriousness of the eye injury. Furthermore, even though he eventually regained "normal" vision in his left eye, his reading rate slowed appreciably. He testified that: "It takes more than normal to read what I used to read in a few minutes." For example, reading a newspaper required 30 to 45 minutes instead of five, and, "depending on how long [he] read[s], [his] eye becomes blurry."

On this evidence, reasonable jurors would conclude beyond a reasonable doubt that Mr. Daniel suffered "protracted loss or impairment of the function of a bodily ... organ," his left eye, and sustained a "serious bodily injury." Therefore, affirming his conviction under the plain error standard of review would neither constitute a "miscarriage of justice," since Mr. Wilson admitted cutting Mr. Daniel;[11] nor "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings." *Olano, supra,* 507 U.S. at 732, 736, 113 S.Ct. 1770.

In short, the trial court's instruction on aggravated assault while armed included all of the elements of the crime. While the trial judge erred by not defining "serious bodily injury," the evidence of Mr. Wilson's guilt was strong and compelling beyond a reasonable doubt. As we said in *Guishard, supra,* "the instructions actually given were 'sufficiently complete' and were coupled with a record that supported a finding of [guilt]." 669 A.2d at 1315 (citation omitted). Thus, the evidence was sufficient beyond a reasonable doubt to support the jury's finding of guilt as to the charge of aggravated assault while armed.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*

---

**11.** The jury obviously rejected Mr. Wilson's self-defense claim.