**Nadir SAVAGE–EL, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 03–CF–1300.

District of Columbia Court of Appeals.

Argued Jan. 26, 2006.
Decided June 29, 2006.

Stephen Cooper, Public Defender Service, with whom James Klein and Samia Fam were on the brief, for appellant.

Suzanne C. Nyland, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the brief was filed, and Elizabeth Trosman, Rhonda Redwood, and David C. Woll, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and KRAMER, Associate Judges, and GREENE, Senior Judge of the Superior Court of the District

of Columbia.*

GREENE, Senior Judge of the Superior Court of the District of Columbia:

On June 25, 2003, a grand jury indicted appellant on separate counts of arson (D.C.Code § 22–301), malicious destruction of property (D.C.Code § 22–303), threatening to damage property (D.C.Code § 22–1810), and carrying a dangerous weapon (spray bottle with gasoline) outside her home or business (D.C.Code § 22–4504(a)) (hereinafter, "CDW"), as well as three counts of threatening to injure a person (D.C.Code § 22–1810). Following a jury trial, appellant was convicted of the CDW count and acquitted of the remaining counts on August 20, 2003. She appeals her conviction, asserting that (1) the evidence at trial was insufficient as a matter of law to support the jury's finding that a spray bottle containing gasoline constituted a "dangerous weapon" under the circumstances here, and (2) the trial judge erred in declining appellant's request to define the term "great bodily injury" (used in the jury instruction defining "dangerous weapon") in the same manner as this Court has required that the element of "serious bodily injury" be defined in an aggravated assault (D.C.Code § 22–4502) prosecution. *See Nixon v. United States,* 730 A.2d 145, 150 (D.C.1999); *cf.* D.C.Code § 22–3001(7).

For the reasons which follow, we reject appellant's contentions and affirm her conviction.

## I.

The evidence adduced at trial established, *inter alia,* that since 2000, appellant had resided in apartment 31 on the third floor of the Park Morton Housing Complex, a public housing facility, at 617 Morton Street, N.W., in the District of Columbia. In January, 2003, the District of Columbia Housing Authority began instituting procedures to evict her. After receiving an eviction notice, appellant went to the property management office on numerous occasions in March, 2003, and "made a couple of threats" that "if they were going to set her out, then nobody was going to live in the building. She was going to blow the mother fucker up." At about the same time, appellant was seen in the area "walking around with a squirt bottle saying that she was going to squirt gasoline on people" or "going to get someone." After a number of delays, appellant's eviction was finally scheduled for April 9, 2003.

About 7:30 p.m. on April 8, 2003, one of appellant's neighbors, Judith Turner, was inside her apartment when she heard an argument in the hallway and appellant's voice threatening to "put the place on fire." After the argument ended, Turner left her apartment; she saw no one in the hallway, but saw and smelled gasoline there. She poured plant soil on the gasoline and called 911. Later in the evening, a D.C. Fire Department arson investigator, Eugene Marshall, went to 617 Morton Street, N.W. to investigate a fire report. He found an "ignitable liquid" that smelled like gasoline on the concrete steps between the second and third floors of the building, as well as two burned matches.

Later in the evening of April 8, 2003, appellant entered a convenience store at 3331 Georgia Avenue, N.W., in the District. She held a red squirt bottle in her right hand, a thin, 12–inch–long strip of metal in her left hand, and a piece of the broken neck of a beer bottle on one of her left fingers. She smelled strongly of gasoline. When the cashier, Annette Gregario, asked appellant if she needed help, appel-

* Sitting by designation pursuant to D.C.Code § 11–707(a) (2001).

lant responded, "I'm going to fuck you up when you get out of work." Thereafter, appellant left the store and Gregario pushed a button behind the counter to summon the police.

In the early morning hours of April 9, 2003, Metropolitan Police Officer Edward Brownlee saw appellant behind 617 Morton Street, N.W. As she walked past him, Brownlee smelled a strong odor of gasoline and noticed appellant carrying a "reddish color" squirt bottle in her right hand. Brownlee asked appellant to talk with him; she complied and he walked her over to 618 Morton Street, N.W., to a female officer. Meanwhile, a second police officer, James Conway, saw appellant and Brownlee enter 618 Morton Street, and saw appellant turn her back on Conway, and "fidget ... around." When Conway walked to within three to four feet of appellant, he saw a red "spray bottle-type thing" and a book of matches on the ledge of the window near where appellant was standing. When Conway asked appellant if the bottle was hers, she replied, "no dice to that."

About 2 a.m. on April 9, arson investigator Marshall returned to 618 Morton Street, N.W., and observed a red plastic container with a white spray cap and an open matchbook in close proximity to it sitting on the inside window ledge of the first floor. The container smelled of gasoline. A forensic chemist, Roy Kutner, determined that the bottle in fact contained gasoline, and testified that appellant's left thumbprint was found on the book of matches.

In her defense testimony, appellant acknowledged, *inter alia*, that (1) she carried the spray bottle of gasoline "to scare people off" because she had been "jumped a couple [of] times," (2) she carried it into the convenience store the night of April 8, 2003, and (3) she put the spray bottle and the book of matches on the inside windowsill of 618 Morton Street, N.W., early on the morning of April 9, 2003. She denied spraying the gasoline on people or intending to burn the building down.

At the end of the government's case, and again at the close of all of the evidence, appellant moved for judgment of acquittal, asserting, *inter alia*, that the government had failed to adduce sufficient evidence upon which a reasonable juror could conclude beyond a reasonable doubt that the spray bottle containing gasoline, allegedly possessed by appellant, constituted a "dangerous weapon" under D.C.Code § 22–4504(a). Her motions were denied.

Following the close of all of the evidence, appellant's trial counsel asked the trial judge to modify instruction 4.70, "Carrying a Pistol Without a License or Carrying a Deadly or Dangerous Weapon," in *Criminal Jury Instructions for the District of Columbia* (4th edition revised, 2002) (the "Redbook"). Instruction 4.70 defines a "dangerous weapon" as "any object likely to produce death or *great* bodily injury by the use made of it"; the instruction does not further define "great bodily injury." (Emphasis added.) Appellant requested that the instruction be modified in two respects: by (1) changing "great" to "serious," and (2) defining "serious bodily injury" in accord with Redbook instruction 4.06A, which defines the element of "serious bodily injury" required to prove aggravated assault [1] as "an injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." The trial judge refused appellant's request,

1. *See* D.C.Code § 22–404.01.

agreeing with the government's assertions that (1) "serious bodily injury," as thus defined, requires a higher burden of proof than "great bodily injury," and (2) the government need only prove that a dangerous weapon must be one that is likely to produce death or "great bodily injury" under the CDW statute. Consequently, the judge instructed the jury in accord with the language of Redbook instruction 4.70.

## II.

■ In assessing a claim based upon insufficient evidence, we review the evidence "in the light most favorable to the government, 'giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact.'" *Hart v. United States*, 863 A.2d 866, 873 (D.C.2004), quoting *Curry v. United States*, 520 A.2d 255, 263 (D.C. 1987).

■ To establish appellant's guilt of carrying a dangerous weapon, the government was required to prove beyond a reasonable doubt that (1) she carried an object in an open or concealed manner, (2) the object was likely to produce death or great bodily injury by "the manner [in which it was] used *or threatened to be used*," (3) appellant intended to do the acts that constituted carrying the weapon, and

(4) she intended to use the object as a dangerous weapon. *Stroman v. United States*, 878 A.2d 1241, 1245 (D.C.2005) (emphasis added). *See also Alfaro v. United States*, 859 A.2d 149, 161 (D.C. 2004); *Scott v. United States*, 243 A.2d 54, 56 (D.C.1968). We recently have equated the term "great bodily injury," used to define a "dangerous weapon" under the weapons provisions of chapter 45 of Title 22 of the D.C.Code, with the "serious bodily injury" that constitutes an element of aggravated assault under D.C.Code § 22–404.01, *i.e.*, bodily injury "that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." *Alfaro v. United States*, *supra*, 859 A.2d at 161–62 (holding evidence insufficient to support conviction of attempted possession of a prohibited weapon). *See also Nixon v. United States*, 730 A.2d 145, 150 (D.C. 1999).[2]

■ Here, it is evident from the trial record that a reasonable juror could have found that the evidence proved beyond a reasonable doubt each of these elements.

First, the evidence that appellant (1) "carried" the spray bottle of gasoline, and (2) intended to carry it, was both compel-

---

**2.** The government's vigorous argument, both in its brief and at oral argument, that *Alfaro* should not be read as equating "great bodily injury" and "serious bodily injury," is not persuasive, given our resolution of that issue in *Alfaro*. But see *Gathy v. United States*, 754 A.2d 912, 920 n. 9 (D.C.2000), where we found

> no merit in Mr. Gathy's argument that the definition of "serious bodily injury" which we adopted in Nixon for purposes of the aggravated assault statute must be applied to the jury finding that the beer bottle [in *Gathy*] was an "object that is likely to produce death or great bodily injury by the use

made of it" to satisfy the "while armed" element of D.C.Code § 22–3202. Our decision in *Nixon* to adopt a specific definition of "serious bodily injury" for purposes of aggravated assault has no effect on *the long-established rule that the determination of whether something is a dangerous weapon is ordinarily left to the jury*. [Citing cases in earlier footnote.] (Emphasis added.)

This case does not require us to resolve whatever tension, if any, that may exist between our holding regarding the sufficiency of the evidence in *Gathy*, on the one hand, and our subsequent sufficiency holdings in *Alfaro* and *Stroman*, on the other.

ling and virtually uncontroverted. She was seen with the bottle by two witnesses, and a third observed her standing next to a window ledge where the bottle was located; and while she protested to Officer Conway on the scene, "no dice to that," in response to his question whether the bottle on the ledge was hers, she acknowledged at trial that she carried the bottle of gasoline.

Second, the evidence left little room for doubt regarding her intent to carry the bottle for use as a dangerous weapon. Overwhelming circumstantial evidence reflected that intent—her walking around her apartment complex with the bottle saying she was going to squirt gasoline on people or, more ominously, "going to get someone"; her threat on the night of her arrest, while carrying the bottle and other dangerous objects, to "fuck ... up" a convenience store worker after the worker got out of work; and her attempt to conceal from police shortly before her arrest her simultaneous possession of matches and the gasoline bottle. Moreover, during her own testimony appellant acknowledged that she was carrying the gasoline to use as a weapon, *i.e.*, "to scare people off."

Finally, convincing evidence reflected that the gasoline bottle being carried by appellant was likely to produce death or great bodily injury by "the manner in which it [was] used *or threatened to be used.*" *See Stroman v. United States, supra*, 878 A.2d at 1245 (emphasis added). First, there was testimony that appellant made *repeated* threats during the month before her arrest to "blow the motherfucker [*i.e.*, her apartment building] up" if she was evicted, and that she stated at least once that "if she couldn't live there, no one would." Second, she was overheard by a neighbor, Judith Turner, on the night of her arrest threatening to "put the place on fire," whereupon Turner almost immediately exited her apartment and saw and smelled gasoline in her stairwell. Third, an arson investigator, Eugene Marshall, reported to appellant's building the night of her arrest, smelled gasoline, and found an "ignitable" liquid and two burnt matches on concrete steps between the second and third floors of appellant's building—a few hours before Officer Conway saw appellant standing next to a window ledge with the gasoline bottle and a book of matches that appellant at first denied were hers, but later acknowledged she possessed after her thumbprint was found on the matchbook. Finally, the overlay of appellant's powerful motive to avoid her imminent eviction and *her prior statements tying her likely eviction to prospective violent conduct by her*, added significant force to the reasonable inferences to be drawn from the other circumstantial evidence that she intended to use her bottle of gasoline not just to "spray people," but to cause an explosion or conflagration that plainly could have resulted in the deaths of, or serious bodily injuries to, one or more persons.

### III.

■ Following over a century of precedent in—or approved in—this jurisdiction,[3] the trial judge instructed the jury that a "dangerous weapon" is an object "likely to produce death or great bodily injury by the use made of it." However, he refused trial counsel's request to further define

---

3. *See, e.g., Tatum v. United States,* 71 App. D.C. 393, 110 F.2d 555, 556 n. 9 (1940), citing with approval *United States v. Reeves,* 38 F. 404, 406 (Circ.Ct., W.D.Tex.1889) and *United States v. Williams,* 2 F. 61, 64 (Circ.Ct., D.Or.1880). *See also Criminal Jury Instructions for the District of Columbia* ([1st ed.] 1966), no. 65, "Carrying a Concealed Weapon."

"great bodily injury" in accord with the definition of the element of "serious bodily injury" under the aggravated assault statute, at least in part because he agreed with the government's contention that proof of "serious bodily injury" imposed a higher burden on the government than proof of "great bodily injury." *But see Alfaro v. United States, supra,* 859 A.2d at 161 ("Although 'great bodily injury' has not been defined in this jurisdiction by statute, it is difficult to distinguish the term from 'serious bodily injury.' Indeed, we find it impossible, as a practical matter, to envisage a bodily injury that is 'great' but not 'serious' "). Thus, the trial judge failed to foresee our holding in *Alfaro* that the "serious bodily injury" which constitutes an element of aggravated assault is virtually indistinguishable from the "great bodily injury" that warrants classification of an object as a "dangerous weapon" under D.C.Code § 22–4514(b).

However, the trial court's refusal to further define a term, *i.e.,* "great bodily injury," that *was not itself an element of the offense with which appellant was charged* but merely a phrase used to help define an element, was consistent with our prior decisions holding that trial judges ordinarily are not required to further define terms in jury instructions that are themselves only definitional. *Curington v. United States,*

621 A.2d 819, 821–23 (D.C.1993) (trial court was not required to provide jury with statutory definition of "pistol" where "pistol" was not an element of carrying a pistol without a license [4] but merely a "term included in one of the elements"); *Wilson v. United States,* 785 A.2d 321, 328 (D.C.2001), quoting with approval *Compton v. State,* 931 P.2d 936, 941 (Wyo.1997) ("[a] court need not give an instruction defining a term unless it has a technical meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its import in relation to the factual circumstances").[5] While a future case with different facts might present a circumstance where a term used to define another term in a jury instruction "has a technical meaning so different from its ordinary meaning" that a further explanation would be needed to avoid jury confusion or misunderstanding, we are satisfied that there was no meaningful risk of such confusion or misunderstanding here where the trial judge defined "dangerous weapon" in accord with Redbook instruction 4.70,[6] "great bodily injury" as used in the definition did not have a "technical" meaning different from its ordinary meaning in the context of the factual circumstances here (*see Wilson v. United States, supra,* 785 A.2d at 327)[7],

---

**4.** *See* D.C.Code § 22–4504(a) (formerly § 22–3204(a)).

**5.** Of course, we repeatedly have held that we may uphold a trial court decision for reasons other than those given by that court, even if the reasons are erroneous but the decision can be sustained on other grounds. *Prince v. United States,* 825 A.2d 928, 931 (D.C.2003); *Lyles v. United States,* 879 A.2d 979, 983 (D.C. 2005).

**6.** In an analogous context, we previously have held that D.C.Code § 22–4504 (formerly § 22–3204) is not void for vagueness because it fails to define "dangerous weapon" with sufficient particularity. *Scott v. United States,*

243 A.2d 54, 56 (D.C.1968). *See also United States v. Brooks,* 330 A.2d 245, 247 (D.C.1974) (reaching the same result with respect to D.C.Code § 22–4514(b) (formerly D.C.Code § 22–3214(b))).

**7.** Appellant's assertion that *Alfaro* should be read to require, upon request, a *jury instruction* defining "great bodily injury" in accord with the definition of the element of "serious bodily injury" in aggravated assault cases is not persuasive. No language in *Alfaro* even discusses—let alone renders a holding about—the propriety or impropriety of any jury instruction, nor could it, inasmuch as *Alfaro* involved the appeal of a conviction following a *non-jury* trial.

and there was no inquiry from the jury requesting clarification or definition of the term.[8]

## IV.

For the foregoing reasons, the judgment appealed from is hereby

*Affirmed.*

---

8. We do not hold that a trial judge never may be called upon to instruct further on the meaning of a dangerous weapon. Where the possibility of great bodily injury is marginal, or where the jury has expressed uncertainty about the meaning of that concept as applied, the judge may indeed be obliged to grant a defense request for further instruction on what serious bodily injury means, in accordance with *Alfaro* or otherwise. But that is not this case. Here, where the risk of grave injury to others from appellant's threatened ignition of gasoline in a bottle was readily apparent, the judge did not abuse his discretion in relying on the jury's common-sense understanding of the concept, absent a request by the jury for further guidance. (The jury did request a dictionary at one point during its deliberations. However, after the trial judge instructed them in response that they could tell him any term they were having difficulty understanding and he would provide a definition, the jury made no further inquiry in this regard.)