Michael C. CAIN, a/k/a Charles S. Cain, Appellant,

v.

UNITED STATES, Appellee.

No. 84–752.

District of Columbia Court of Appeals.

Argued July 10, 1986.
Decided April 8, 1987 *.

Maureen T. Cannon, Public Defender Service, with whom James Klein and Jennifer P. Lyman, Public Defender Service, were on brief, for appellant.

---

* The decision in this case originally was released as a Memorandum Opinion and Judgment.  It is being published pursuant to the Court's order granting appellee's motion for publication.

Ann K.H. Simon, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty., and Judith Hetherton, Asst. U.S. Atty. at the time brief was filed, and Charles L. Hall, Asst. U.S. Atty., were on brief, for appellee.

Before PRYOR, Chief Judge, and NEWMAN and STEADMAN, Associate Judges.

PER CURIAM:

Appellant Michael C. Cain, a/k/a Charles S. Cain, was indicted on two counts of armed rape, one as a principal and one as an aider and abettor of a separate assault committed by an unknown man. D.C. Code §§ 22–105, –2801 (1981). In addition, he was indicted on two counts of sodomy, one as a principal and one as an aider and abettor of a separate act committed by an unknown man. D.C.Code §§ 22–105, –3502 (1981). Following trial, the jury convicted him of two counts of the lesser included offense of assault with intent to commit rape and two counts of sodomy. By way of this appeal, appellant launches a fivefold attack on the verdict. Having examined each contention, and finding no merit in any of them, we affirm.

## I

Appellant and the complaining witness had known each other since 1973 and dated sporadically over a period of years. From 1979 to March 1982, appellant lived in California and had little if any contact with the complainant. In March 1982, appellant returned to Washington, D.C., and resumed a relationship with the complainant that included sexual intimacy.

On the evening of October 11, 1982, at approximately 8:00 p.m., appellant went to the complainant's apartment to fix the pilot light on her stove. After brief conversation, he left and she went to bed. At about 1:15 a.m., on October 12, after the complaining witness had been asleep for about four hours, she was awakened by appellant knocking at the door of her apartment. Soon after she let him into the apartment, he indicated that he wanted to have sex

with her, but she declined. Without incident, he left again, this time with the apartment keys that she lent to him. Twenty minutes later, at about 1:35 a.m., he returned, accompanied by a man the complainant did not know, whom appellant called "Big Boy." While the complainant stood in the kitchen, appellant twice demanded that she remove her nightgown, and when she refused each demand, he hit her in the face twice. She ultimately complied and was forced into her bedroom where first the stranger and then appellant attempted to have vaginal intercourse with her, and where she was forced to perform oral sodomy with the stranger and then with Cain while the stranger attempted anal sodomy with her. Immediately following the sexual assaults, appellant gathered some of the complainant's clothes and told her to dress. Thereafter, the three left the apartment.

At approximately 4:00 a.m., as the trio approached a convenience store at 14th Street and Rhode Island Avenue, N.W., the complaining witness broke away from the two men and ran into the store, crying and asking to use the phone to call her mother. One employee called the police and another, Raphael Bello, stopped a police cruiser, driven by Sergeant Joseph Williams. Mr. Bello recognized the two men who were with the woman as having been customers earlier that evening. Further, he testified that when the woman ran from them toward the store, one of the men walked quickly away and the other ran. Mr. Bello identified appellant in court as one of the men.

Officer Williams brought the complainant to the police station. At that time, she did not say she had been raped or sodomized; rather, she complained that she had been assaulted. At approximately 9:00 a.m., the complainant was examined by Dr. Feliz Soborio, a physician in the emergency room at Providence Hospital. He had no recollection that she had reported being raped or sodomized, and he made no notations to that effect in his records. Later the same day, however, the complainant was examined again at Providence Hospital

by Dr. Darryl Brooks, a third-year resident in obstetrics and gynecology. The examination revealed no direct evidence of sexual assault; however, Ms. Leslie Ballard, a nurse present during the examination, testified that the complainant told her she had been raped. Finally, blood and semen deposits recovered from bed linens were too scant to type.

At trial, appellant based his defense on a theory that the complaining witness had fabricated her version of the events in question.

## II

Appellant argues that the trial court erred when it refused to instruct the jury on the lesser included offense of simple assault.[1]

"The determination of whether a lesser included offense instruction is required turns upon the answers to two questions. First, is the relationship between the greater offense and the lesser offense such that a lesser offense instruction would be proper; that is, does the lesser offense consist entirely of some but not all of the elements of the greater offense? Second, does the evidence justify giving the charge; that is, is there a sufficient evidentiary predicate to support the charge?" *Pendergrast v. United States*, 332 A.2d 919, 924 (D.C. 1975) (citations omitted); *see also Glymph v. United States*, 490 A.2d 1157 (D.C.1985).

Thus, the question presented here is whether, viewing the substantive evidence presented by both sides, there was a "suffi-cient evidentiary predicate" to warrant an instruction on a lesser offense.

The factual element that distinguishes simple assault from assault with intent to commit rape, the most closely related greater offense about which the jury was instructed, is the intent to commit rape. Accordingly, the court would be required to give the requested instruction if there was sufficient evidence that the fact of "intent to rape" was disputed by the evidence.

■ In this instance, the government's evidence painted a picture of a single, integrated occurrence characterized as a sexual assault. Nothing in the government's evidence suggested the assault was not sexual. Appellant did not testify. The defense, which included testimony from appellant's father, was primarily an attack upon the complainant's credibility: cross-examination about her relationship with appellant, the timing of her complaint against him, and the lack of conclusive medical evidence of a sexual assault. In sum, there was no substantive evidence from the prosecution or the defense that the assault was other than sexually motivated. Under these circumstances, we conclude that the court did not abuse its discretion in declining to give the requested instruction.[2]

## III

■ Appellant contends that Count IV of the indictment is fatally defective because it does not contain the essential elements of the offense charged and, therefore, is both technically deficient and inadequately protective of the appellant's interests.[3] It is

1. At the government's request and over defense objection, the court instructed the jury on the lesser included offenses of unarmed rape, assault with intent to rape, and assault with intent to commit sodomy.

2. Appellant also argues that the trial court erred by instructing the jury that his theory of the case was that the complaining witness had fabricated *all* of her testimony. Appellant's requested instruction was more limited, stating that complainant had fabricated the sexual aspects of the assault. A criminal defendant is entitled to a properly requested instruction on his theory of the case if such theory is supported by any evidence. *Montgomery v. United States*, 384 A.2d 655, 660 (D.C.1978). Because there is insufficient evidence in the record to support ap-

pellant's requested instruction, we hold that the court's version of appellant's theory of the case instruction was not erroneous.

3. The government notes that this objection was not raised in the trial court. Instead, at trial, appellant objected that the indictment was duplicitous. Duplicity occurs when a defendant is charged with two or more offenses in a single count of an indictment. Here, defendant was charged with two methods of carrying out a single offense. This is not duplicity. *United States v. Miqueli*, 349 A.2d 472 (D.C.1975) (government may in single indictment charge all prohibited acts conjunctively and proceed to prove one or more). Nor was the indictment multiplicitous because it did not charge the

well-established that an information or indictment must contain all the essential elements of the offense charged. *United States v. Bradford,* 482 A.2d 430, 433 (D.C. 1984); *Craig v. United States,* 490 A.2d 1173 (D.C.1985). Further, that an indictment contains these essential elements is good indication that the defendant's interests are protected. These interests are three: (1) an indictment must sufficiently apprise the defendant of the nature of the accusations against him so that he can prepare his defense; (2) an indictment must enable a defendant to plead an acquittal or conviction in bar of future prosecutions; and (3) an indictment must accurately reflect the intent of the grand jury and the facts found by the grand jury. *United States v. Bradford, supra,* 482 A.2d at 433–34 & n. 3.

In the case before us, there is no serious challenge on notice or double jeopardy grounds. *Tonker v. United States,* 85 U.S. App.D.C. 369, 178 F.2d 712 (1949) (statutory language of D.C.Code § 22–3502(a) provides sufficient notice to defendant to comport with the Sixth Amendment); *Craig v. United States, supra,* 490 A.2d at 1177 (where, as a practical matter, record is sufficiently detailed to preclude second prosecution for same offense, indictment will not fail for double jeopardy concerns).

Appellant's remaining challenge to the indictment must, therefore, be addressed. At trial, the court permitted the prosecutor to explicate the text, and thereby distinguish, two facially identical counts of the four-count indictment. According to the prosecutor, Count III referred to appellant's indictment for oral sodomy as a principal, and Count IV referred to appellant's

indictment as an aider and abettor of oral and rectal sodomy by another.[4] Appellant contends it was improper to allow the government to explicate the text of Count IV because doing so amounts to prosecutorial amendment and carries no guarantee that the grand jurors had actually voted to encompass both oral and anal sodomy in Count IV but only oral sodomy in Count III. Appellant argues that, notwithstanding the fact that Count IV of the indictment borrows verbatim the "suggested" language of the D.C. sodomy statute, it fails to articulate any essential elements of sodomy and is, therefore, defective. Moreover, appellant argues, because Count IV is defective in this way, he has been deprived of his Fifth Amendment right arising from the express constitutional mandate that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury."

We have understood this constitutional requirement to mean that an indictment must carry some guarantee that it reflects what was in the minds of the members of the grand jury. "To allow the prosecutor or the court to guess what was in the minds of the grand jurors at the time they returned the indictment would deprive the defendant of this 'basic protection.' [*Russell v. United States,* 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962).] For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him. [*Id.* ]" *United States v. Bradford, supra,* 482 A.2d at 434 n. 3; *Scutchings v. United States,* 509 A.2d 634, 636 (D.C.1986). Accordingly, we must find

---

same offense in more than one count. *Barker v. United States,* 373 A.2d 1215, 1219 n. 5 (D.C. 1977) (government may proceed under two theories of liability—principal and aider and abettor—under one count). *See United States v. Bradford,* 344 A.2d 208, 213 n. 11 (D.C.1975).

**4.** Counts III and IV read in their entirety:
   *Third Count:*
   On or about October 12, 1982, within the District of Columbia, Michael C. Cain, also known as Charles S. Cain, and a person whose identity is unknown to the Grand Jury, committed a certain unnatural and perverted

sexual practice, with [the complaining witness]. (Sodomy, in violation of 22 D.C.Code, Section 3502.)
   *Fourth Count:*
   On or about October 12, 1982, within the District of Columbia, Michael C. Cain, also known as Charles S. Cain, and a person whose identity is unknown to the Grand Jury, committed a certain unnatural and perverted sexual practice, with [the complaining witness]. (Sodomy, in violation of 22 D.C.Code, Section 3502).

that appellant's Fifth Amendment rights are intact if either the indictment articulates the essential elements of the crime of sodomy or there is sufficient evidence that the offense for which appellant was tried was the same offense that was in the minds of the grand jurors.

Appellant argues that the statutory language used in this case—"committed a certain unnatural and perverted sexual practice, with [the complaining witness]"—does not capture an essential or all the essential elements of the crime of sodomy. Rather, appellant asserts, the essential element of the offense is "carnal copulation in an opening of the body except sexual parts with another person." D.C.Code § 22–3502(a). Moreover, appellant asserts that to satisfy *Russell,* Count IV must set out these acts with particularity and specify whether the defendant is being charged with oral or anal sodomy.

█ It is clear from the statutory language that the legislature did not intend oral and anal sodomy to be separate crimes, but rather separate methods for committing the crime of sodomy. D.C. Code § 22–3502(a). That being so, we must inquire whether the constitutional mandate that an indictment articulate the essential elements of the offense entails a second-tier mandate that the method of committing the offense is itself an essential element of the offense. In these circumstances, we find that it does not. D.C.Code § 22–3502 prohibits carnal copulation in *any* opening of the body that is not a sexual organ; thus, which of the nonsexual organs or nonsexual openings of the body are involved is irrelevant. The grand jury needed only to conclude that appellant committed sodomy in one way of any number of alternative statutorily expressed and implied ways; it was then up to the prosecutor to prove one or more of these alternative methods beyond a reasonable doubt, and, finally, up to the petit jury to resolve the issues by way of unanimous verdict. *See United States v. Miller,* 471 U.S. 130, 136, 105 S.Ct. 1811, 1815, 85 L.Ed.2d 99 (1985) (Fifth Amendment not violated where indictment alleges more crimes or other means for committing same crime). In this case, as to Count IV, the petit jury in fact unanimously found that appellant, acting as an aider and abettor, committed oral sodomy only.

While repetition of statutory language is not always sufficient to constitute an adequate indictment, where the language of the indictment states the "species of unlawful [conduct]" and the language referring to that species has a particular meaning and distinguishes a particular class of behavior, the indictment may be deemed to have "adequately descended to particulars." *United States v. Young,* 376 A.2d 809, 814 (D.C.1977). Here in passing § 22–3502, the legislature could not have been clearer in publicizing its intent that, for the purposes of sodomy indictments, "unnatural and perverted sexual practice" is a phrase that adequately encompasses the proscribed acts in the alternative. Accordingly, the prosecutor's elaboration on Count IV adds nothing new or unusual to the indictment, and so, is not an amendment at all.

We hold, therefore, that appellant's Fifth Amendment right to be tried only on an offense for which the grand jury returned an indictment was not compromised.

## IV

As appellant's next assignment of error, he contends the trial court abused its discretion when it allowed the prosecutor to impeach an important defense witness with the witness' pre-trial silence. At trial appellant's father, Charles Cain, Sr., testified that at about 5:30 p.m. in the early evening before the sexual assault, both the complainant and his son were present in his apartment. They argued, and afterward, the complainant appeared to have been crying, but did not appear to have any bruises on her face. Appellant's father did not contact the police or the prosecutor with information about this encounter even though it might have been exculpatory insofar as it might have provided a rationale for appellant's theory that the complaining witness had fabricated much of her version of the story. At trial the prosecutor cross-

examined the witness regarding his failure to come forward immediately.

██ We are unpersuaded that the court committed error in permitting this line of inquiry in this case. In these circumstances, such questioning amounts to no more and no less than testing the credibility of the witness. Moreover, we find this to be especially true where, as here, the witness and defendant are father and son who live together. It is clear, however, that in certain contexts, a prosecutor is precluded from commenting upon or inquiring into the reasons underlying a witness' delay in coming forward with exculpatory evidence. *See United States v. Young,* 150 U.S.App. D.C. 98, 463 F.2d 934 (1972) (alibi and missing witness situations). We need not address the precise reach of those prohibitions since the case before us does not arise out of such context.

### V

██ Finally, appellant asserts that the trial court permitted the prosecutor to make reference to appellant's failure to testify at trial.[5] Appellant argues the prosecutor's statement was an improper comment on his failure to testify because it implied that, although the complainant did not know the identity of the second assailant, appellant did, but he "isn't saying." We conclude that any inference to be drawn from the prosecutor's statement must have been a function of voice intonation or other contextual cues; that being so, the trial judge was in a far better position than us to assess whether a comment on appellant's failure to testify had been made. We find no error.

██ In addition, appellant argues that in closing argument, the prosecutor improperly referred to the highly publicized New Bedford, Massachusetts rape case, thereby improperly and prejudicially appealing to the sympathy of the jury.[6] We find the alleged allusion to the New Bedford case to be tenuous at best, and that it is not improper to point out to the jury that it is common for there to be a scarcity of witnesses in a sexual assault case. Moreover, we hold, even if the prosecutor's comments could be construed as a step beyond what is proper, such error is harmless. *Kotteakos v. United States,* 328 U.S. 750, 761, 66 S.Ct. 1239, 1246, 90 L.Ed. 1557 (1946).

Accordingly, the judgment of conviction is hereby

*Affirmed.*

---

5. In his rebuttal closing argument, the prosecutor, referring to the second, unidentified man who allegedly assaulted the complaining witness, argued to the jury:

"* * * Isn't it clear ladies and gentlemen, that the way Mr. Bello testifies in fact supports what [the complainant] told us, that Mr. Cain was with another man that night and that they in fact came to her apartment and raped her. Who was the other man? Well, [the complainant] doesn't know."

6. The prosecutor said, "Ladies and gentlemen, I would ask you to think back over what I would suggest to you is pretty common knowledge, and that is the crime of rape is a pretty lonely crime. It isn't usually committed in some public place such as a bar with onlookers."