933 A.2d 1251 (2007)
Walter A. BOLANOS, Luis M. Palacio, Edgar A. Cruz, Appellants
v.
UNITED STATES, Appellee.
Nos. 98-CF-1821, 98-CF-1871 and 98-CF-1872.
District of Columbia Court of Appeals.
Argued March 24, 2005.
Decided May 10, 2007.
*1254 Thomas L. Dybdahl, Public Defender Service, with whom James W. Klein and Jaclyn S. Frankfurt, Public Defender Service, were on the brief, for appellant Walter A. Bolanos.
Robert S. Becker, Washington, DC, appointed by the court, for appellant Luis M. Palacio.
*1255 Joseph A. Virgilio, appointed by the court, for appellant Edgar A. Cruz.
Florence Pan, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, at the time the brief was filed, John R. Fisher, Assistant United States Attorney, at the time the brief was filed, Barbara J. Valliere, and Margaret A. Sewell, Assistant United States Attorneys, were on the brief, for appellee.
Before WASHINGTON, Chief Judge, FARRELL, Associate Judge, and SCHWELB, Senior Judge.[1]
WASHINGTON, Chief Judge:
Appellants Walter A. Bolanos ("Bolanos"), Luis M. Palacio ("Palacio"), and Edgar A. Cruz ("Cruz") appeal from their convictions of aggravated assault while armed ("AAWA"),[2] assault with a dangerous weapon ("ADW"),[3] and carrying a dangerous weapon ("CDW").[4] Appellants' convictions stem from an altercation at school, during which Jose Mejia ("Mejia"), Omar Gonzalez ("Gonzalez"), and David Rodriguez ("Rodriguez") were stabbed. Each appellant contends that there is insufficient evidence to support the "serious bodily injury" element of AAWA. Separately, Palacio contends that there was insufficient evidence to support his conviction for ADW. Appellants Bolanos and Palacio contend that the trial court erred when it failed to dismiss the indictments for the AWIMWA counts. Cruz contends that the trial court erred by denying his pretrial motion to suppress out-of-court identifications by the victims and that his conviction should be reversed on grounds that his indictment was improperly amended. Finally, all appellants contend that if their convictions for AAWA are upheld, then their convictions for ADW merge into them as lesser-included offenses and that two convictions as to the same victim should also merge. We affirm in part, reverse in part, and remand in part.

I.
During the afternoon of April 14, 1998, victims Mejia, Gonzalez, Rodriguez, and three of their friends left Bell Multicultural School, where they attended high school. Although claiming not to be a gang, the group called themselves the Graffiti Kings because they liked to "tag"i.e., write their nameson the school's walls. As they crossed the school playground, they encountered a group of approximately fifteen young men, including appellants Bolanos, Palacio, and Cruz. According to the three victims, the appellants were members of a rival group called the Little Brown Union. Allegedly, as the two groups crossed paths, Palacio confronted the Graffiti Kings regarding an earlier dispute.[5] *1256 A fight soon ensued between the two groups. At one point, a member of the Graffiti Kings shouted that someone from Little Brown Union had a knife. Almost immediately three members of the Graffiti Kings ran. Mejia, Gonzalez, and Rodriguez, however, could not get away and each was stabbed multiple times during the fight.
At trial, all three victims testified about the extent of their injuries. Their medical records, documenting their injuries, were stipulated. There was, however, no testimony, expert or otherwise, explaining the medical records or their contents.
Following trial, the jury convicted Bolanos of: two counts of ADW as a lesser-included offense of both AWIMWA and AWIKWA, both as to the victim Mejia; one count of AAWA, as to Mejia; and, one count of CDW. Palacio's convictions are: two counts of ADW as a lesser-included offense of both AWIMWA and AWIKWA, both as to the victim Rodriguez; one count of ADW as a lesser-included offense of AWIKWA, as to the victim Gonzalez; one count of AAWA, as to Rodriguez; and, one count of CDW. Cruz's convictions are: two counts of ADW as a lesser-included offense of AWIKWA, as to Mejia and Gonzalez; two counts of AAWA, as to Mejia and Gonzalez; and, one count of CDW.

II.
Sufficiency of the Evidence Claims with Respect to Appellants' AAWA Convictions
All three appellants argue that there was insufficient evidence to permit a reasonable trier of fact to find that they inflicted "serious bodily injury," an essential element of AAWA, on any of the victims in this case. See e.g., Riddick v. United States, 806 A.2d 631, 639 (D.C. 2002). This court reviews sufficiency of the evidence claims "in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences from fact." Gibson v. United States, 792 A.2d 1059, 1065 (D.C. 2002). The evidence is insufficient when the government produces "no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." Lewis v. United States, 767 A.2d 219, 222 (D.C.2001).
This court defines serious bodily injury to encompass "bodily injury that involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty." (Troy) Nixon v. United States, 730 A.2d 145, 149 (D.C.1999). Since Nixon, this court has emphasized the "high threshold of injury" that "the legislature intended in fashioning a crime that increases twenty-fold the maximum prison term for simple assault." Swinton v. United States, 902 A.2d 772, 775 (D.C. 2006) (citing Jenkins v. United States, 877 A.2d 1062, 1069 (D.C.2005)). For example, the fact that an individual suffered from knife or gunshot wounds does not make that injury a per se "serious bodily injury." Zeledon v. United States, 770 A.2d 972, 977 (D.C.2001). We have found grievous stab wounds, however, to be sufficient to satisfy the definition of serious bodily injury. *1257 See Jenkins, 877 A.2d at 1071 (multiple deep stab wounds to victim's chest, stomach and arm, inflicted with a seven or eight-inch knife); Baker v. United States, 867 A.2d 988, 995, 1009 (D.C.2005) (victim stabbed in stomach, head and arm, with substantial loss of blood); Hart v. United States, 863 A.2d 866, 875 (D.C.2004) (woman stabbed multiple times in the arms and in the vagina). The difference is a matter of degree. Serious bodily injury usually involves a life-threatening or disabling injury, but the court must also consider all the consequences of the injury to determine whether the appropriate "high threshold of injury" has been met. See Swinton, supra, 902 at 776 (internal quotations omitted).
In the present case, the trial was held before we issued our opinion in Nixon, and as a result the trial court failed to instruct the jury on two of the Nixon prongsextreme pain and unconsciousness. Instead, the trial court defined serious bodily injury as an injury that causes substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the functions of a bodily member or organ. Because the trial court only instructed the jury on three of the five factors, the instruction was incorrect. See Johnson v. United States, 520 U.S. 461, 467, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (new criminal rules will apply retroactively to cases pending on direct review).
This instructional error, however, does not result in per se reversal. If there was sufficient evidence to convict based upon the instruction given, then, necessarily, the verdict satisfies one of the Nixon elements of serious bodily injury. In addition, where this court finds instructional error but sufficient evidence in the record to support a conviction under the correct instruction, we will remand for further proceedings to allow the government, at its election, to re-try the appellant on the original charge. Gathy v. United States, 754 A.2d 912, 920 (D.C.2000).[6] It is only when the evidence is insufficient to permit a trier of fact to conclude guilt beyond a reasonable doubt under either the instruction given or the Nixon instruction that we reverse the conviction with instructions to the trial court to enter judgment on any appropriate lesser-included offenses. Id.
Cruz's AAWA Conviction for Assaulting Gonzalez
Gonzalez testified that Cruz stabbed him through his arm, that the knife then penetrated into his stomach, and that he underwent surgery. Gonzalez's medical records state that to repair the perforation of his intestine, Gonzalez underwent surgery to suture the laceration. In addition, Gonzalez's medical records state that after three days and upon discharge, Gonzalez was prescribed Percocet for pain and given a follow-up appointment at the trauma clinic. There was no expert testimony presented regarding the effects of the knife wounds, or whether these types of wounds could be considered life-threatening.[7] The evidence in the record *1258 also fails to demonstrate if the wounds or incisions from the surgery physically scarred Gonzalez and the extent of the scarring, if any. Based on this record, we conclude that the evidence presented to the jury was insufficient to support a finding that Gonzalez faced a substantial risk of death, serious permanent disfigurement, or protracted loss or impairment of the functions of any bodily organ.
Nevertheless, the government, relying on this court's holding in Wilson v. United States, 785 A.2d 321, 329 (D.C.2001) argues that the jury could reasonably conclude that Gonzalez suffered an impairment of the function of a bodily organ because Gonzalez underwent surgery to repair the perforation of his bowel. Id. at 329. The victim in Wilson, however, sustained a laceration in his right eye, which required four interrupted stitches, and a cut in his left eye. In addition, medical testimony was presented as to the seriousness of the injury and that the victim required close monitoring for development of complications. Moreover, because the victim was legally blind in his right eye at the time, the cut to his left eye was even more serious because the victim's entire vision could be compromised. The victim, after three months and presumably after the return of his vision, returned to work, but testified that he was reading at an appreciably slower rate. Based on this evidence, this court concluded the victim suffered an impairment of a bodily organ sufficient to support a finding of serious bodily injury. Id. (affirming on other grounds). In contrast, there was no evidence presented to the jury in this case regarding the severity of Gonzalez's perforated intestine or whether Gonzalez suffered lingering effects from the knife wounds. Nor is there any indication that Gonzalez required additional monitoring, except for the one follow-up appointment scheduled upon discharge. Instead, Gonzalez's medical records state that upon discharge, a mere three days later, Gonzalez was on a regular diet. Based on these facts, we cannot conclude that the evidence could reasonably support a jury's finding that Gonzalez suffered impairment of a bodily function as a result of his being stabbed by Cruz.
Palacio's AAWA Conviction for Assaulting Rodriguez
Rodriguez testified that Palacio stabbed him in his arm and cut his wrist, and that another unknown assailant stabbed him in his abdomen. Rodriguez's medical records described the upper arm wound as "without complication" and the wrist wound as "superficial," requiring only stitches. Rodriguez was also stabbed in the abdomen, but the medical records state that there were no life threatening or potentially disabling injuries from the abdomen wound. In addition, Rodriguez's records state he was able to "ambulate[] independently." After Rodriguez stayed in the hospital for less than eighteen hours, the hospital discharged him with a prescription for Percocet to be taken as needed for pain, and he was given a follow-up appointment at the trauma clinic. Finally, we note that the record was void of any evidence of the medical, consequential or lasting effects of the wounds inflicted on Rodriguez. Therefore, even viewing this evidence in a light most favorable to sustaining the jury's verdict, we conclude that there is insufficient evidence from which a reasonable jury could find that Rodriguez *1259 faced a substantial risk of death, or suffered from either protracted and obvious disfigurement or protracted loss or impairment of the function of a bodily member as a result of the stabbing wound he received from Palacio. Cf. (Troy) Nixon, supra, 730 A.2d at 149 (holding that despite evidence that a victim was shot in the shoulder and back, there was insufficient evidence to support a finding of serious bodily injury because the record was silent as to the effects of shooting on the victim).
Bolanos' and Cruz's AAWA Convictions for Assaulting Mejia
Turning now to Mejia's injuries, Mejia testified that Bolanos and Cruz approached him, armed with knives, and that Bolanos stabbed him once in the chest and Cruz stabbed him once in the left shoulder.[8] After being stabbed, Mejia ran towards the school and, from there, was transported to the hospital. Mejia's medical records state that he had an "uneventful transport" to the hospital with no loss of consciousness. Mejia testified that upon arrival at the hospital he was bleeding, his muscles hurt, and he had pain in his chest. Nevertheless, his medical records indicate that despite complaints of shortness of breath related to pain, Mejia arrived "alert, speaking and appropriately obeying commands." Mejia remained in the hospital for two nights and three days and had "surgery" on the day of the incident.[9] Mejia's wounds were characterized as small and round. The medical records also indicated that Mejia had a "small left apical pneumothorax" and a "left basilar atelectasis"; however, no medical testimony was provided to the jury about the meaning of those terms. Mejia was discharged after forty-eight hours. Upon discharge, the doctors gave Mejia a prescription for Percocet and instructed him not to lift anything greater than ten pounds.
Looking at the nature and extent of the injuries described in the record, and the high threshold of injury required for AAWA, a reasonable juror could not reasonably find that Mejia suffered a serious bodily injury under the pre-Nixon instruction given to the jury. The government argues that Mejia faced a substantial risk of death, as evidenced by his own statement that he believed he was going to die. That testimony alone, however, is not sufficient to support a conviction for AAWA. Unlike in Zeledon, where this court concluded that there was sufficient evidence in the record from which a reasonable juror could conclude that the victim suffered a serious bodily injury based on the medical testimony that the bleeding was severe enough to cause death, Zeledon, supra, 770 A.2d at 974 no such evidence was produced by the government in this case. In fact, the government failed to produce any expert testimony as to the life-threatening nature of Mejia's injuries.[10] Although Mejia's medical records were available to the jury, there is nothing in the medical records from which a reasonable jury could conclude that Mejia was inflicted with a life-threatening injury.
In the same vein, we reject the government's argument that Mejia suffered a "protracted and obvious disfigurement" in *1260 the form of scarring.[11] To be "protracted and obvious," the scar must be "a serious permanent or physical disfigurement." (Troy) Nixon, supra, 730 A.2d at 150. And "to be permanently disfigured means that the person is appreciably less attractive or that a part of his body is to some appreciable degree less useful or functional than it was before the injury." Perkins v. United States, 446 A.2d 19, 26 (D.C. 1982). Medical records characterized Mejia's wounds as one centimeter or smaller. Such small scars to the chest and shoulder do not make Mejia "appreciably less attractive," nor do these scars make any part of his body to "some appreciable degree less useful or functional." Id.; cf. Gathy, supra, 754 A.2d at 919 ("protracted and obvious disfigurement" found when victim suffered 48 stitches to the face and a chipped piece of bone in his nose). Also, "obvious" disfigurement "indicates a degree of genuine prominence." Swinton, supra, 902 A.2d at 777. In the present case, the scars' location and the size of the wounds are appreciably less prominent. Therefore, we find that there is insufficient evidence in the record from which a reasonable jury could conclude that Mejia suffered a serious bodily injury as that concept was defined to the jury. Despite our conclusion that there was insufficient evidence presented at trial to support appellants' convictions for AAWA under the trial court's pre-Nixon instruction, our inquiry is not complete. Under Nixon and Gathy, we are obligated to review the record to determine whether there is sufficient evidence to support a reasonable conclusion that the victims suffered extreme physical pain.[12]
Extreme Physical Pain
The extreme physical pain necessary to satisfy Nixon is a level of pain that "must be exceptionally severe if not unbearable." Swinton, supra, 902 A.2d at 777; cf. (Troy) Nixon, supra, 730 A.2d at 150 (referring to "immobilizing pain"); Alfaro v. United States, 859 A.2d 149, 162 (D.C.2004) ("vicious" whipping of a child with a wet telephone cord did not create "extreme" pain). We have held that the victim need not use the specific word "extreme" to describe the pain, but rather that "a reasonable juror may be able to infer the pain was extreme from the nature of the injuries and the victim's reaction to them." Swinton, 902 A.2d at 777 (citing Anderson v. United States, 857 A.2d 451, 464 (D.C.2004); Gathy, supra, 754 A.2d at 918). Should we conclude that there is sufficient evidence in the record to support such a finding, the case will be remanded to give the government an opportunity, should it so choose, to re-try the appellant for AAWA under that theory of the case. Gathy, supra, 754 A.2d at 912.
Turning first to Rodriguez and Gonzalez, the record indicates that after being stabbed, Rodriguez walked to the nurse's office with the assistance of a friend and that Gonzalez was also able to walk with the assistance of a security guard. Neither victim, however, testified as to how much pain, if any, he felt. Although at trial Detective Hewick testified that all the victims were in pain and that *1261 each was given Percocet for pain, this evidence is not enough to satisfy the showing of extreme pain that the statute requires. Therefore, we reverse both Cruz's AAWA conviction for the assault on Gonzalez and Palacio's AAWA conviction for the assault on Rodriguez. Upon remand the trial court shall vacate these convictions; however, the convictions for ADW, as lesser-included offenses, shall stand. Gathy, supra, 754 A.2d at 919 (ADW is a lesser-included offense of aggravated assault while armed).
On the other hand, a reasonable juror could find beyond a reasonable doubt that Mejia suffered extreme physical pain from the multiple stab wounds he received, sufficient to satisfy the threshold required for a conviction of AAWA. Specifically, Mejia testified that he told an officer that he was in pain and that he could not breathe. He also testified that his muscles hurt, his chest was in pain, and he kept thinking that he was going to die. In addition, Mejia's medical records indicate that, upon his arrival at the hospital, Mejia complained of shortness of breath related to pain. To combat the pain, the hospital prescribed Mejia pain medication both during his hospital stay and upon discharge. Under these circumstances, a jury could reasonably infer that Mejia suffered "extreme physical pain."
Nevertheless, because the trial judge failed to instruct on this part of the definition of serious bodily injury, we must reverse the AAWA convictions of Bolanos and Cruz for the assault of Mejia and remand to the trial court for further proceedings. Upon remand, the government shall have the option to retry Bolanos and Cruz on the AAWA charge because the evidence established sufficient evidence of extreme pain. If the government elects not to retry them, then Bolanos and Cruz shall stand convicted of ADW for the assault of Mejia.[13]

III.
Palacio's ADW Conviction for Assaulting Gonzalez
Palacio argues that the evidence was insufficient to support his conviction for ADW for assaulting Gonzalez because Gonzalez identified Cruz as his attacker. The government counters that while there is no direct evidence that Palacio stabbed Gonzalez, there was sufficient evidence presented to convict Palacio of ADW as an aider and abettor during the attack on Gonzalez.[14] To establish aiding and abetting, the government must prove that: (1) the offense was committed by someone; (2) the accused participated in the commission of the offense; and (3) he did so with guilty knowledge. Hawthorne v. United States, 829 A.2d 948, 952 (D.C. 2003) (citation and quotations omitted).
The question before this court is whether there was sufficient evidence to support the finding that Palacio participated as an aider and abettor in the assault on Gonzalez. It is well established that the government must present evidence from which a juror could reasonably conclude that the accused was not only present at the crime, but also that his conduct encouraged or facilitated the commission of the offense. *1262 See Price v. United States, 813 A.2d 169, 177 (D.C.2002). To that end, Price is particularly instructive in this case. In Price, the uncontroverted evidence showed that the appellant's co-defendants committed the assault on the victim; nevertheless, this court found there was sufficient evidence to convict the appellant as an aider and abettor. Id. Price was not only armed and present during the commission of the crime, but fled the scene along with his cohorts after the assault. Moreover, Price never distanced himself from the crimes and instead demanded to know, from the victim, who shot at his car. "From [Price's] action it was reasonable to infer that he knew about the crimes, took some part in the confrontation, facilitated its commission by his demand [for an answer to his inquiry] and armed presence, and remained until making his escape after the offenses were completed. This evidence [was] sufficient to support the conviction[]." Id. at 178; cf. Jones v. United States, 625 A.2d 281 (D.C.1993) (concluding that the evidence was insufficient to support a conviction under the aiding and abetting theory because although the appellant was seen talking with the assailant and left with him after the assault was committed, the appellant walked past the victim and continued up the street during the commission of the offense because it did not demonstrate that the appellant did anything to encourage or facilitate the assault).
Similarly, in this case, there was uncontroverted evidence that Palacio was with CruzGonzalez's attackernot only from the beginning of the fight, but throughout. In fact, each of the victims testified that Palacio was the one who initiated the confrontation by stepping forward from his group and telling the Graffiti Kings that if they have a problem with Little Brown Union then they should say something. Moreover, the evidence showed that Palacio was the first to draw his knife, thereby encouraging the other members of his group to do the same. Finally, the record is devoid of any evidence that Palacio effectively withdrew from the conflict prior to any assault taking place. Settles v. United States, 522 A.2d 348, 358 (D.C. 1987) (appellant's failure to avail himself of opportunities to withdraw from the scene could lead a reasonable juror to conclude that appellant tacitly approved and encouraged the commission of the crime). For these reasons, we are satisfied that there was sufficient evidence to support Palacio's conviction, as an aider and abettor, for the assault on Gonzalez.

IV.
Defective AWIMWA Indictments
Appellants Palacio and Bolanos argue that their indictments for AWIMWA were defective because there was no indication in the indictment that the grand jury considered whether there were any mitigating circumstances that would have excused their conduct. If the AWIMWA indictments were defective, then the trial court's error in failing to dismiss the AWIMWA counts was severely prejudicial because neither appellant had attained the age of majority, and each would have been in the exclusive jurisdiction of the Family Division of the Superior Court, which affords far more protection and rehabilitation to juveniles than adults receive in the Criminal Division. D.C.Code § 16-2301.02 (1981). Accordingly, appellants argue that their ADW and AAWA convictions should be reversed. For the reasons discussed below, we reject appellants' argument.
In Cain v. United States, 532 A.2d 1001, 1004 (D.C.1987) this court held that an indictment must allege all essential elements of the crime charged. We reasoned that all the essential elements must be *1263 alleged in a proper indictment so that the indictment accurately reflects the intent of the grand jury and the facts on which the grand jury based its probable cause determination. Id. Thus, a proper indictment for an AWIMWA charge would indicate that the grand jury determined probable cause existed for each of the following elements: (1) defendant assaulted the complainant; (2) defendant did so with specific intent to kill the complainant; (3) there were no mitigating circumstances (in cases where there is sufficient evidence of provocation); and (4) that at the time of the commission of the offense the defendant was armed. Howard v. United States, 656 A.2d 1106, 1114 (D.C.1995). Palacio and Bolanos argue that the indictments charging them with AWIMWA are defective because the indictments fail to allege that the grand jury found probable cause to believe that there were no mitigating circumstances. Appellants' argument fails, however, because this court has held that "a jury need not be instructed on the issue of mitigation unless either the defendant or government has generated some evidence of that factor." See Bostick v. United States, 605 A.2d 916, 918 (D.C. 1992) (quoting Comber v. United States, 584 A.2d 26, 41 n. 17 (D.C.1990)) (internal alterations omitted). In a grand jury proceeding, the government "ordinarily is not obligated to present a grand jury all evidence that is favorable to an accused." Miles v. United States, 483 A.2d 649, 654-55 (D.C.1984) (internal citation omitted). Thus, because the government did not submit evidence of provocation or mitigating circumstances, the grand jury did not need to find probable cause as to that element.
Nevertheless, appellants argue that this general rule is subject to the exception that "where a prosecutor is aware of substantial evidence negating a defendant's guilt which might reasonably be expected to lead a grand jury not to indict, his failure to disclose such evidence to a grand jury may lead to a dismissal of the indictment." Id. at 655. Appellants' reliance on this court's dictum in Miles is misplaced, especially in light of the Supreme Court's subsequent holding in United States v. Williams, 504 U.S. 36, 46-47, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992). In Williams, the Court of Appeals for the Tenth Circuit, relying on the supervisory powers of the judiciary, affirmed the district court's dismissal of the petitioner's indictment because the government withheld exculpatory evidence from the grand jury. Id. at 39, 112 S.Ct. 1735. The Supreme Court reversed, holding that a district court may not dismiss an otherwise valid indictment because the government failed to disclose to the grand jury "substantial exculpatory evidence" in its possession. Id. at 45, 112 S.Ct. 1735. In reaching its decision, the Court relied heavily on the traditional role and function of the grand jury. Justice Scalia, writing for the majority, explained that the function of the grand jury is "not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge," id. at 51, 112 S.Ct. 1735, and because the grand jury's role is to only examine the foundation of the charge laid by the prosecutor, the accused does not "have a right to testify or have exculpatory evidence presented." Id. at 51-52, 112 S.Ct. 1735.
In addition, this court has favorably cited to the Williams' holding in several of our cases. See Bruce v. United States, 617 A.2d 986, 993 (D.C.1992) ("In general . . . courts will not entertain the contention that the evidence before the grand jury was insufficient to indict."); Feaster v. United States, 631 A.2d 400, 414 (D.C. 1993) (King, J., concurring) (noting that although not required to do so, the prosecutor presented potential exculpatory evidence *1264 to the grand jury). Based on these authorities, we conclude that the trial court did not err in failing to dismiss the AWIMWA indictments. However, even assuming, without deciding, that the prosecutor had an obligation to present mitigating evidence to the grand jury, our review of the record indicates that there were no mitigating circumstances or other evidence presented at trial that would have led the grand jury not to indict. Therefore, appellants' argument that the indictments were defective, because the indictments failed to allege that there was no mitigation, is without merit.

V.
Out-of-court Identifications
Cruz next contends that the trial court erred by denying his pretrial motion to suppress his out-of-court identification by the victims. Cruz's principal contention is that the photo array used in this case was impermissibly suggestive because based on the testimony of victims Mejia and Gonzalez, that is, they were shown only two to three photographs as opposed to the eleven photographs that the detective testified that he showed to both victims. Cruz also claims that the out-of-court identifications should be suppressed because even if the full photograph array was shown to Mejia and Gonzalez, his photograph differed from the others in the array because his photo's background was more brightly lit, and his physical appearance in the photo differed from that of the other people in the array.
To prevail on a motion to suppress a pretrial identification, the appellant must establish that "the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification." Lyons v. United States, 833 A.2d 481, 485 (D.C. 2003). Even if this court finds that the identification procedure employed was impermissibly suggestive, the identification is nevertheless admissible so long as it is of sufficient reliability. Id. This court is bound by the trial court's findings on suggestivity and reliability as long as they are supported by the evidence and are in accordance with the law. See Turner v. United States, 622 A.2d 667, 672 n. 3 (D.C. 1993). It is the role of the trial court to assess the credibility of witnesses, and this court will not reverse a credibility finding unless it is clearly erroneous or lacking evidentiary support. See Hill v. United States, 664 A.2d 347, 351 (D.C.1995).
While there was conflicting testimony presented about how many photographs were shown to Mejia and Gonzalez, with Detective Hewick testifying that he had shown one photo spread, comprised of eleven photographs to both Mejia and Gonzalez, and Gonzalez testifying that he remembered looking through only two to three photographs, the trial court credited the testimony of Detective Hewick when it denied Cruz's motion to suppress. Cruz fails to offer any evidence to this court as to why the trial court's credibility finding is plainly wrong; thus, we will not reverse the trial court's credibility finding. Hill, supra, 664 A.2d at 351. Because the trial court credited Detective Hewick's testimony regarding the size of the photo array shown to the victims, appellant's argument that the out-of-court identifications were obtained through the use of a limited number of photos has no merit.
Cruz also argues that the trial court erred because his photo differed from the other photos used in the spread in several respects. Our review of the record, however, does not support Cruz's complaint. Each photograph in the array was of an individual with relatively short hair. All of the photos were of Hispanic males of similar *1265 age, with similar skin tone and eye color. Although three of the photos were darker due to the poor quality of the photograph or bad lighting, most of the photographs were similar in context to Cruz's photograph and there was at least one photograph that was as light or lighter than Cruz's photograph. Thus, the record fails to establish a level of suggestivity that would create a substantial likelihood of misidentification.
Even assuming arguendo that the photo array was impermissibly suggestive, Cruz's claim still fails because the trial court concluded that the identification was independently reliable, and we discern no basis to disturb that finding. In assessing the reliability of an eyewitness, the court must consider: (1) the opportunity for observation; (2) the length of observation; (3) the lighting conditions; (4) the lapse of time between identification and observation; (5) the factors affecting witness perception during observation; and (6) the witness's confidence in the identification. See Beatty v. United States, 544 A.2d 699, 701 (D.C.1988). Both Mejia and Gonzalez testified that they were face to face with Cruz for several seconds during the assault, which occurred during daylight hours. More significantly, both had seen Cruz several times before the day of the assault; Mejia testified that he had seen Cruz around school many times and Gonzalez testified he had seen Cruz around the neighborhood. Additionally, each victim gave detailed and accurate descriptions of Cruz to Detective Hewick before the photo spread was shown to each of the victims. Finally, Mejia and Gonzalez expressed confidence in their identifications. When picking out Cruz from the photo array, Gonzalez said, "he is the one that got me." Mejia testified that "there was no doubt in [his] mind" that Cruz stabbed him in the shoulder. Based on the totality of the circumstances, we are satisfied that the identifications were reliable. See Lyons, supra, 833 A.2d at 486. The trial court, therefore, did not err in denying Cruz's motion to suppress the out-of-court identifications. See Beatty, supra, 544 A.2d at 701; Turner, supra, 622 A.2d at 672 n. 3; Lyons, supra, 833 A.2d at 485.

VI.
Improper Amendment of Indictment
Cruz alleges that the trial court's instruction on AAWA improperly amended the indictment; thus, violating his Fifth Amendment right to be tried only on charges returned by a grand jury. The argument is without merit. Under the statute, an individual commits AAWA if he either: (1) "knowingly or purposely causes serious bodily injury to another person"; or (2) "under circumstances manifesting extreme indifference to human life, . . . knowingly engages in conduct which creates a grave risk of serious bodily injury to another person, and thereby causes serious bodily injury." D.C.Code § 22-404.01 (2001). Cruz's indictment states that he "knowingly and purposefully cause[d] serious bodily injury" to the victims. However, the trial court's jury instructions to the jury also included the second means of committing aggravated assault, that is, the defendant manifested extreme indifference to human life by knowingly engaging in conduct which created a grave risk of serious bodily injury.
Since Cruz did not object to the instruction at the trial level, we review for plain error. Super. Ct.Crim. R. 30 ("No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection."); see also Wilson-Bey v. United States, 903 *1266 A.2d 818, 828 (D.C.2006) (en banc). Accordingly, reversal is warranted "`only in exceptional circumstances' where a miscarriage of justice would otherwise result." Gordon v. United States, 783 A.2d 575, 581 (D.C.2001) (quoting Robinson v. United States, 649 A.2d 584, 586 (D.C.1994)). While the indictment failed to state both subsections of the aggravated assault statute, it did include a citation that encompassed both subsections; thus, Cruz had notice that he would be required to defend against both prongs. We find that Cruz has failed to show that a miscarriage of justice occurred, in light of the notice he received through the citation to the aggravated assault statute included in the indictment. See Smith v. United States, 801 A.2d 958, 962 (D.C.2002) (holding that there is no risk that fairness or integrity is affected where the indictment, although including only the language of the first subsection of the aggravated assault statute, also includes a citation that encompasses both subsections).

VII.
Merger
Appellants make various merger arguments. The government concedes that if appellants' AAWA convictions are upheld, then their convictions for ADW merge because ADW is a lesser-included offense of AAWA. See Beaner, supra note 14 at 540-41. The government also agrees that two ADW convictions as to the same victim would merge.
The jury convicted Palacio of two counts of ADW, both for the assault of Rodriguez, and one count of AAWA, also for the assault of Rodriguez. The two counts of ADW merge into one, and upon remand the trial court shall vacate one ADW conviction. Because we reverse Palacio's AAWA conviction for assaulting Rodriguez, the ADW conviction does not merge with any other conviction. Similarly, the jury convicted Bolanos of two counts of ADW, both for the assault of Mejia. These counts must also merge and upon remand the trial court shall vacate one ADW conviction. There are also no merger issues between the AAWA and ADW convictions because we reversed Bolanos' AAWA conviction for the assault of Mejia. Finally, the jury convicted Cruz of two counts of ADW, one as to Gonzalez and one as to Mejia, and two counts of AAWA, also one as to Gonzalez and one as to Mejia. Because we reverse each of Cruz's AAWA convictions, both the ADW convictions must stand.
Conclusion
To summarize, we reverse with instructions to the trial court to vacate Cruz's AAWA conviction for assaulting Gonzalez and Palacio's AAWA conviction for assaulting Rodriguez. We also reverse Cruz's and Bolanos' AAWA convictions for assaulting Mejia. Upon remand, if the government so elects then it may retry either Cruz or Bolanos, or both, on the original charge of AAWA for the assault of Mejia. Should the government elect to not re-try Cruz or Bolanos, their convictions for the lesser-included offense of ADW for the assault of Mejia shall stand. In all other respects, we affirm.
So ordered.
NOTES
[1] At the time this case was argued, Judge Washington was an Associate Judge on the court. His official term as Chief Judge began on August 6, 2005.

At the time this case was argued, Judge Schwelb was an Associate Judge on the court. His official term as Senior Judge began on June 24, 2006.
[2] In violation of D.C.Code §§ 22-504.1 & -3202 (1981).
[3] All appellants were charged with assault with intent to kill while armed ("AWIKWA"), but the jury acquitted on those charges. D.C.Code §§ 22-501 and -3202 (1981). Additionally, Palacio and Bolanos were charged with assault with intent to murder while armed ("AWIMWA"). D.C.Code §§ 22-503, -2403, and -3202 (1981). They were acquitted of AWIMWA. Instead, the jury convicted appellants of ADW as a lesser-included offense of both AWIKWA and AWIMWA.
[4] In violation of D.C.Code § 22-3204 (1981).
[5] Earlier that day Gonzalez, accompanied by Rodriguez and two other members of the Graffiti Kings, had a verbal encounter with Bolanos and other unnamed members of Little Brown Union. Gonzalez approached Bolanos and asked whether Bolanos tagged over the Graffiti Kings' tags. The encounter ended when Gonzalez and his friends left, while the school security guard was approaching the group.
[6] We take this moment to explicitly join our sister jurisdictions that have adopted the Supreme Court's conclusion that in reviewing sufficiency of the evidence claims the evidence "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson v. Virginia, 443 U.S. 307, 324 n. 16, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); see, e.g., Malik v. State, 953 S.W.2d 234, 238 (Tex.Crim.App. 1997); United States v. Zanghi, 189 F.3d 71, 80 (1st Cir.1999).
[7] The government contends in its brief that expert medical testimony was not required. While the government may be correct, expert testimony would have been properly admitted because many of the medical terms used in the medical records and the effects of the wounds on the victims were beyond the ken of the average layperson. See (Gregory) Nixon v. United States, 728 A.2d 582 (D.C.1999). Therefore, although expert testimony was not required, it certainly would have assisted the jury in its understanding of the medical questions involved in this case.
[8] Mejia was also stabbed once in the back by an unknown assailant.
[9] It appears from the medical records that the surgery Mejia was referring to was the insertion of a chest tube.
[10] See supra, note 7.
[11] The government, wisely, makes no contention that Mejia suffered from a protracted loss or function of a bodily member or organ. Because the record is silent as to any evidence that might suggest Mejia suffered from loss or function of a bodily organ, we do not address the point here.
[12] The evidence showed that each of the victims either ran to the school nurse's office or was escorted to the nurse's office with the assistance of another. There was no evidence to suggest that at any point the victims were rendered unconscious; therefore, unconsciousness is not a factor that this court needs to examine.
[13] The government, however, may not elect to re-try Palacio because the jury acquitted Palacio of the AAWA count for the assault of Mejia.
[14] The trial court instructed the jury that, "[it] may find the defendant guilty of the crime charged in the indictment without finding that he personally committed each of the acts that make up the crime." The court then proceeded to instruct the jury on the elements that constitute aiding and abetting.